## In re Morris.

A. J. Williams, for petitioner.

MacDade, J., March 10, 1930.—This is a petition by the Board of Examiners in and for the County of Delaware for the suspension for two years from the practice of law in our courts of one Frank S. Morris, a member of the Delaware County Bar.

Before presentation of the petition and the granting of the rule thereon to show cause, the board of examiners held a number of meetings, at which respondent failed to appear and make answer to the charges preferred against him, although he was duly supplied with copies of the charges preferred and notified in writing of the time and place of the meetings held to hear the same.

The charges or complaints made to the said board of examiners acting as the Board of Censors for Delaware County, consisted of allegations that, in

various divorce proceedings, he was guilty of unprofessional conduct in undertaking to obtain divorces, and particularly for Hubert Morris and Minnie Lawton, by accepting money from them and failing to render the services promised or to return the money to the said complainants. The complainants filed affidavits with the said board.

On Nov. 2, 1929, copies of the said affidavits were mailed to the said Frank S. Morris by the secretary of the said board, calling upon him to file answers on or before Nov. 16, 1929, when a hearing would be fixed, and in default of answers the matter would be proceeded with *ex parte*.

No answers to the said affidavits were filed by the said Frank S. Morris, and, on Dec. 30, 1929, at 2 P. M., a special meeting of the board was held to consider said complaints and after a full discussion the board of examiners determined that disciplinary action was necessary; that the respondent had accepted money from the said complainants promising to perform legal services therefor and had failed to perform such services, and also failed and refused to return the money to them, and that he had been guilty of unprofessional conduct. The board recommended to the court that he be suspended from practice before the said court for a period of two years.

The order which we must inevitably make hereinafter is based upon the testimony and the respondent's failure to answer the serious charges preferred against him and to appear before the said board of examiners acting as a board of censors after due and timely notice.

It would serve no practical or useful purpose to elaborate further the details of the respondent's misconduct. We have searched the evidence diligently, but without avail, to discover some mitigating circumstance to justify withholding a remedy which is always reluctantly applied. Such practices are destructive of that relation of absolute trust and confidence which should exist between the bar and the public, without which the former cannot render its full measure of public service. This respondent has more than once heretofore been reprimanded and warned. He has betrayed a client's trust. A shamed profession can redeem and preserve its high repute and rehabilitate itself in the public confidence only by sternly expelling from its ranks one who has so grievously dishonored its traditions.

Chief Justice Sharswood, in a volume of lectures on professional ethics, delivered before the Law School of the University of Pennsylvania and published in 1854, thus solemnly cautions the young lawyer respecting his duties in the handling of client's moneys: "Most emphatically should it be said, let nothing tempt you, not even the knowledge and consent of the client, to keep the money which may come to your hands professionally one single instant longer than is absolutely necessary. The consequence of any difficulties arising upon this head will be fatal to your professional character and prospects."

The literary charm and edifying instruction of this work merit the careful and constant study of the bar, particularly of its younger and more inexperienced members. It is spiritually strengthening, and should be a "lamp unto the feet and a light unto the path" of the advocate seeking safe passage through the perplexing questions of professional prosperity.

It certainly is not necessary, nor would it serve any useful purpose, to write a disquisition on the standards and traditions of the law as a profession, nor to reiterate the platitude that those who minister at her altar must be above reproach. The derelictions of the respondent in the present case were not violations of any abstruse or involved rules of ethics as to which opinions might differ, but were in disregard of the elementary principles of fair dealing.

The important and honorable office which the censors render to the profession and to the community compels us to stamp with our condemnation the failure of the respondent to appear before them to answer the charges of falsehood and deception in dealing with his clients, the affiants herein. Indeed, such methods in themselves justify the application of the ultimate disciplinary measure of disbarment.

Under such circumstances, the court is reluctantly obliged to enter the following

### Order.

And now, March 10, 1930, the rule of the board of censors be and is made absolute and the prothonotary is directed to strike from the roll of attorneys of the Court of Common Pleas of Delaware County the name of Frank S. Morris, the respondent, and to give notice of this action to the Orphans' Court of said Delaware County and to the Supreme Court and Superior Court of Pennsylvania.                                  From William R. Toal, Media, Pa.